1
2
3
4
5
6

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

7

**PATRICK WARNSHUIS,**

**CASE NO. 1:19-CV-1454 AWI BAM**

8

**Plaintiff**

9

v.

**ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO AMEND**

10

**BAUSCH HEALTH U.S., LLC f/k/a Valeant Pharmaceuticals North America, LLC, et al.,**

11

(Doc. Nos. 21, 26)

12

**Defendants**

13
14

15    This is a products liability case brought by Plaintiff Patrick Warnshuis ("Warnshuis")

16 against the manufacturer, distributor, and seller of "Ocean Saline Nasal Spray." The matter was

17 removed from the Fresno County Superior Court. In the Second Amended Complaint ("SAC"),

18 Warnshuis alleges state law claims for strict products liability, negligent products liability, and

19 breach of warranty. Currently before the Court is Defendant Bausch Health U.S., LLC's

20 ("Bausch") motion to dismiss and Warnshuis's motion to amend. For the reasons that follow,

21 Bausch's motion will be granted in part and denied in part, and Warnshuis's motion will be

22 granted in part.

23

24                                          **BACKGROUND**

25    From the Complaint, in August 2018, Warnshuis bought Ocean Saline Nasal Spray

26 through Defendant Amazon.com, LLC and Amazon.com, Inc. (collectively "Amazon"). After

27 using the nasal spray, Warnshuis began suffering chronic and unexplained sinus infections that

28 would not respond to treatment.

In September 2018, Warnshuis received a recall letter that the nasal spray that he had purchased through Amazon could have microbial contamination, namely the bacteria *pseudomonas aeruginosa*.

Warnshuis continued to suffer sinus infections.  Subsequent culture tests returned positive results for *pseudomonas aeruginosa* bacterial infections.  The bacterial infections have caused and continue to cause Warnshuis serious injury and damages.

**I.     DEFENDANT'S MOTION TO DISMISS**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015).  In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015).  The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).  To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall

short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960.  The Ninth Circuit has distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.  Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014).  If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ."  Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016).  However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities.  Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

      1.    First Cause of Action – Strict Products Liability – Manufacturing Defect

*Defendant's Argument*

Bausch argues that the strict products liability cause of action should be dismissed for three reasons.  First, the cause of action contains many allegations that are made on "information and belief," but no underlying facts are identified that support the belief.  Second, Bausch argues that the complaint lumps it together with other defendants without adequately differentiating the specific conduct of Bausch that is at issue.  Third, the Complaint does not plausibly allege a strict liability claim.  The allegations do not identify an actual manufacturing defect, do not identify the required information for a "consumer expectations" or "risk-benefit" design defect theory, and do not explain how any warnings were inadequate.

*Plaintiff's Opposition*

Warnshuis argues that Bausch is attempting to require the pleading of evidentiary facts, which is not necessary.  The allegations are based on his experience with the nasal spray and his medical experiences, and those experiences serve as the foundation for the allegations made.  For example, Warnshuis states that he received a recall notice, so it can reasonably be implied that Bausch was required to send a recall notice by the FDA.

Warnshuis also argues that the allegations do not improperly lump Bausch with other defendants.  In fact, the SAC properly alleges which claims are alleged against which defendants, including Bausch.

Finally, Warnshuis argues that a manufacturing defect has been properly pled.  There is a specific allegation that the nasal spray was contaminated with microbial contamination.

*Discussion*

a.      Plausible Strict Liability Claim[1]

Generally, a "manufacturing or production defect is readily identifiable because a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line." Barker v. Lull Engineering Co., 20 Cal.3d 413, 429 (1978); In re Coordinated Latex Glove Litigation, 99 Cal. App. 4th 594, 605 (2002).  The "manufacturing defect" theory posits that "a suitable design is in place, but that the manufacturing process has in some way deviated from that design." In re Coordinated Latex, 99 Cal.App.4th at 613. That is, "the product does not conform to the manufacturer's design." Garrett v. Howmedica Osteonics Corp., 214 Cal.App.4th 173, 190 (2013).  The elements of a manufacturing defect claim are:  (1) a product was manufactured, distributed, or sold by the defendant; (2) the product contained a manufacturing defect when it left the defendant's possession; (3) the plaintiff was harmed; and (4) the product's defect was a substantial factor in causing the harm. Crayton v. Rochester Med. Corp., 2011 U.S. Dist. LEXIS 11112, *35 (E.D. Cal. Feb. 4, 2011) (citing Cal. Civ. Jury Inst. ("CACI") § 1201); see also Marroquin v. Pfizer, Inc., 367 F. Supp. 3d 1152, 1159 (E.D. Cal. 2019) (recognizing that CACI § 1201 sets the elements for a manufacturing defect

---

[1] The first cause of action is somewhat unclear.  It is possible to read the allegations as attempting to raise a failure to warn claim.  Bausch's motion addressed all three forms of strict liability that is recognized in California – manufacturing defect, design defect, and warning defect. See Doc. No. 21 at 8:15-10:6; see also Webb v. Specialty Electric Co., Inc., 63 Cal.4th 167, 180 (2016) (recognizing the three strict products liability theories).  Warnshuis's opposition only addresses a manufacturing defect. See Doc. No. 25 at 5:8-24.  The Court views Warnshuis's opposition as representing that only a "manufacturing defect" theory is being pursued. See Marroquin v. Pfizer, Inc., 367 F.Supp.3d 1152, 1159 (E.D. Cal. 2019) (interpreting a cause of action to be limited to one theory of products liability based on the opposition to a motion to dismiss); cf. Ramirez v. City of Buena Park, 560 F.3d 1012, 1026 (9th Cir. 2009) (holding that the failure to address a claim as part of an opposition to summary judgment amounts to an abandonment of the claim); Doe v. Bredesen, 507 F.3d 998, 1007 (6th Cir. 2007) (holding that an opposition to a motion to dismiss that fails to address an argument concedes the point); Pecover v. Electronics Arts, Inc., 633 F.Supp.2d 976, 984 (N.D. Cal. 2009) (same); In re TFT-LCD Antitrust Litig., 586 F.Supp.2d 1109, 1131 (N.D. Cal. 2008) (same). Therefore, the Court will view the first cause of action as containing only a manufacturing defect claim.

claim).  A plaintiff need not show a duty or breach of duty to recover under a strict products liability theory.  Gonzales v. Autoliv ASP, Inc., 154 Cal.App.4th 780, 793 (2007).  To properly plead a manufacturing defect claim, a plaintiff must *inter alia* identify/explain how the product either deviated from the manufacturer's intended result/design or how the product deviated from other seemingly identical models; a bare allegation that the product had "a manufacturing defect" is an insufficient legal conclusion.  Marroquin, 367 F.Supp.3d at 1160; Lucas v. City of Visalia, 726 F.Supp.2d 1149, 1155 (E.D. Cal. 2010).

Here, the SAC contains allegations that touch on each of the elements of a manufacturing defect claim.  First, the SAC alleges that Bausch occupies one or a combination of various links in the manufacturing and distribution chain for Ocean Saline Nasal Spray.[2]  See SAC ¶ 11.  Included in this list of links are manufacturer, distributor, and seller.  See id.; cf. CACI § 1201 (setting the elements of a manufacturing defect claim and identifying the defendant as a manufacturer, distributor, or seller); cf. also Petitpas v. Ford Motor Co., 13 Cal.App.5th 261, 270 (2017) (describing limits and criteria for determining whether a defendant is sufficiently within the chain of distribution).  Therefore, the allegations indicate that Bausch is within the class of defendants that can be held liable for a manufacturing defect.[3]  See CACI § 1201; see also Petitpas, 13 Cal.App.5th at 270.  Second, the SAC lists several different types of defects with the nasal spray.[4]  See SAC ¶ 12.  Included in this list of defects is a "manufacturing defect."  See id.; cf. CACI § 1201; cf. also In re Coordinated Latex, 99 Cal.App.4th at 613 (discussing the nature of a manufacturing defect).  The SAC alleges that the nasal spray was contaminated when placed on

---

[2] The SAC alleges that Bausch and PQM were "the creators, formulators, processors, designers, manufacturers, testers, distributors, sellers, inspectors, marketers, warrantors, lessors, suppliers, modifiers, providers, and/or advertisers of Ocean Saline Nasal Spray."  SAC ¶ 11.

[3] The Court is concerned about the allegation that Bausch is a seller/sold the nasal spray.  The SAC alleges that Warnshuis purchased the nasal spray from Amazon.  It is common knowledge that sellers who are not Amazon may sell products through Amazon.  Warnshuis should have access to his order through Amazon and should be able to determine who the actual seller was.  If Amazon was the actual seller, the Warnshuis should not allege that another defendant sold him the nasal spray.  For now, because the SAC also alleges that Bausch manufactured and/or distributed the nasal spray, the Court will focus on the manufacturer and distributor allegations as either category is sufficient to meet the first element of a manufacturing defect claim.

[4] The SAC alleged that the nasal spray had "formulary, contamination, storage, processing and/or manufacturing defects . . . ."  SAC ¶ 12.

the market by Bausch and that Warnshuis did not modify the product.  See SAC ¶¶ 13, 14.  It is

reasonable to read this allegation as meaning that Warnshuis just opened and used the nasal spray

and the nasal spray was defective/contaminated when it left Bausch's control.  Prior allegations

that were incorporated by reference reasonably indicate that the contaminant was the bacteria

*pseudomonas aeruginosa*.  See id. at ¶¶ 7, 8, 10.  It is true that there is not an allegation that states

"the manufacturing defect is bacterial contamination from *pseudomonas aeruginosa*," nor is there

an allegation that states "the purchased nasal spray differed from the manufacturer's intended

result because it was tainted with a bacterial contaminant."  However, Warnshuis's point is well

taken.  It is obvious that no manufacturer or distributor of a product intended for human ingestion,

particularly a nasal spray, would intend for the product to be contaminated with a bacterial

organism that can cause severe illness in humans.[5]  Therefore, the SAC adequately identifies a

"manufacturing defect."  Third, the SAC indicates that Warnshuis received a recall notice (albeit

from an unknown entity) that identified possible *pseudomonas aeruginosa* contamination in the

nasal spray, he has suffered chronic infections from *pseudomonas aeruginosa* since using the

nasal spray, and he has been harmed by defendants and incurred medical expenses.  See id. at ¶¶ 8,

10, 22, 23, 24.  The allegations of chronic and serious infections from *pseudomonas aeruginosa*,

combined with the recall letter, are sufficient to reasonably infer that Warnshuis was harmed by

the manufacturing defect, i.e. *pseudomonas aeruginosa* on/in the nasal spray.  To be sure, there are

unnecessary and redundant allegations pled under the first cause of action.  See Footnotes 2, 4

*supra*.; Footnotes 7, 10 *infra*. Nevertheless, the Court is satisfied that the above allegations state a

plausible manufacturing defect claim.  Thus, dismissal is inappropriate.

(b)    Allegations Made on "Information and Belief"

In particular circumstances, a plaintiff may make allegations based on "information and

belief" and still be in compliance with *Iqbal* and Rule 8.  "[W]here the facts are peculiarly within

the possession and control of the defendant or where the belief is based on factual information that

makes the inference of culpability plausible," factual allegations may be made on "information

and belief."  Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017).

---

[5] See https://en.wikipedia.org/wiki/Pseudomonas_aeruginosa.

6

Here, Bausch is correct that there are a number of allegations made on "information and belief."  Of those allegations, three paragraphs are relevant to the elements of the manufacturing defect claim.

First, Paragraph 11 contains allegations describing Bausch as a manufacturer or distributor of the nasal spray.  While Warnshuis should generally know whether Bausch manufactured or distributed the nasal spray, the complete manufacturing and distribution chain and how each defendant fits within the chain would not necessarily be information that is available to Warnshuis.  It should be known to Bausch and the other defendants.  Therefore, alleging Paragraph 11 on information and belief is acceptable.  See Park, 851 F.3d at 928.

Second, Paragraph 12 alleges that the nasal spray was contaminated.  The factual basis for this allegation is apparent from other allegations.  Warnshuis began suffering chronic infections after using the nasal spray, he received a recall notice that identified a bacterial contaminant, and Warnshuis later tested positive for the bacterial organism identified in the recall notice.  Therefore, alleging Paragraph 12 on information and belief is acceptable.  See Park, 851 F.3d at 928.

Last, Paragraph 13 essentially alleges that the nasal spray was contaminated when it was placed on the market by Bausch  The factual basis for this can be inferred from the recall notice, Bausch's connection to the nasal spray as a manufacturer or distributor, Warnshuis's use of the spray without alteration, and Warnshuis's medical history (including test results).  Therefore, alleging Paragraph 13 on information and belief is acceptable.  See Park, 851 F.3d at 928.

Additional allegations are made under the first cause of action on information and belief.  However, those allegations are unnecessary to plausibly plead a strict liability manufacturing defect claim.  Therefore, dismissal due to improper "information and belief" allegations is inappropriate.

(c)      "Lumping" Allegations

A plaintiff who sues multiple defendants must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8.  Flores v. EMC Mortg. Co., 997 F.Supp.2d 1088, 1103 (E.D. Cal. 2014); Gavin v. Trombatore, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988).  That is, a pleading should "allege what role each Defendant played in the alleged harm[.]"  Inman

1   v. Anderson, 294 F.Supp.3d 907, 919 (N.D. Cal. 2018).  "Broad allegations against numerous

2   defendants are not specific enough to provide the defendants with notice of the plaintiffs'

3   allegations."  Sheffield v. Orius Corp., 211 F.R.D. 411, 415 (D. Or. 2002).  Generally, "[s]pecific

4   identification of the parties to the activities alleged by the plaintiffs is required . . . to enable [a]

5   defendant to plead intelligently."  Flores, 997 F.Supp.2d at 1103 (quoting Van Dyke Ford, Inc. v.

6   Ford Motor Co., 399 F.Supp. 277, 284 (D. Wis. 1975)); Gen-Probe, Inc. v. Amoco Corp., 926

7   F.Supp. 948, 961 (S.D. Cal. 1996).  Therefore, complaints that lump defendants together without

8   adequately distinguishing claims and alleged wrongs among the defendants are improper.  See

9   Inman, 294 F.Supp.3d at 919; Flores, 997 F.Supp.2d at 1103; Gen-Probe, 926 F.Supp. at 961;

10   Gauvin, 682 F.Supp. at 1071.

11        Here, the first cause of action is specifically alleged against Bausch and Defendant Product

12   Quest Manufacturing, LLC ("PQM").  There are no allegations against "Defendants" in general.

13   Most of the allegations are made as to both Bausch and PQM and the allegations do not

14   distinguish between the individual conduct of Bausch and the individual conduct of PQM.

15   Instead, conduct is ascribed to Bausch and PQM equally, identically, and without differentiation.

16        For many causes of action, this would be problematic since the allegations do not identify

17   individualized conduct and are only one step removed from improperly lumped "all Defendants"

18   allegations (instead of all defendants, the first cause of action lumps two of the four defendants

19   together).  However, the cause of action at issue is a strict products liability manufacturing defect

20   claim.  Putting aside causation and damages, the only other elements of a manufacturing defect

21   claim are a product that was manufactured, distributed, or sold by the defendant, and the product

22   had a manufacturing defect when it left the defendant's control.  See CACI § 1201.  That is, a

23   defendant may be liable for a manufacturing defect as long as the product was defective when it

24   left the defendant's control, see id., and the defendant was sufficiently within the chain of

25   distribution.  See Petitpas, 13 Cal.App.5th at 270; Garcia v. Joseph Vince Co., 84 Cal.App.3d 868,

26   874 (1978).  As discussed above, the manufacturing defect has been adequately identified.

27   Further, the SAC alleges that Bausch and PQM *inter alia* manufactured and/or distributed the

28   nasal spray at issue.  The Court is unaware of any authority that requires any kind of specification

in terms of what or how a particular defendant was involved in either manufacturing or distributing the defective product for purposes of Rule 8 and *Iqbal*.[6]  In the absence of Bausch identifying contrary authority, alleging that a defendant manufactured a product or distributed a product that was defective when it left the defendant's control is sufficient notice for a strict liability manufacturing defect claim.[7]  To be sure, Warnshuis should have a good idea about whether Bausch manufactured or distributed the nasal spray that harmed him.  Nevertheless, given the limited conduct that would make Bausch or PQM liable (manufacturing or distributing a defective product), lumping the two defendants together and essentially alleging that they are part of the manufacturing and distribution chain is sufficient.  Bausch (and PQM) should be able to intelligently admit or deny that they either distributed or manufactured the nasal spray at issue.[8]  Therefore, dismissal because of improper "lumping" allegations is inappropriate.

   2.   Second Cause of Action – Negligence Products Liability

   *Defendant's Argument*

   In addition to relying on its arguments regarding improper "information and belief" and "defendant-lumping" allegations, Bausch argues that no plausible negligence claim is pled.  The SAC does not allege or describe the defect in the nasal spray and does not plausibly indicate that Bausch was negligent regarding a recall of the nasal spray.

   *Plaintiff's Opposition*

   In addition to arguing that the allegations are sufficiently supported by his experiences

---

[6] Of course, a defendant may always file a summary judgment motion if it can show as a matter of law that it was not sufficiently a part of the manufacturing and distribution process to be held liable.  Cf. Petitpas, 13 Cal.App.5th at 261; Garcia, 84 Cal.App.3d at 874.

[7] As discussed above, there is a laundry list of other categories identified in the SAC, in addition to "manufacture, distributor, and seller."  Creating such a list is not helpful because use of the term "or" means that the category/activity may not actually apply to the defendant.  Moreover, the laundry list is essentially irrelevant because the categories do not, in and of themselves, identify a viable defendant.  See CACI § 1201.  If anything, the categories within the list may be subsumed within the category of "manufacturer, distributor, or seller."  It is not necessary for purposes of Rule 8 to pick out exactly what a defendant did within the manufacturing or distribution process.  If the defendant can reasonably be characterized as a "manufacturer, distributor, or seller" of the product at issue, that is all that needs to be alleged.

[8] Again, the Court realizes that Warnshuis has also alleged that Bausch and PQM are sellers.  Including this category along with "manufacturer and distributor" does not change the result.  The SAC would still be alleging in effect that the defendants were sufficiently within the manufacturing and distribution chain to be held liable.

1  with the nasal spray and that Bausch knows the claims alleged against it, Warnshuis argues that

2  there is a plausible negligence claim alleged.  The defect at issue was contamination from the

3  bacteria *pseudomonas aeruginosa*, which has caused him to experience chronic sinus infections.

4         <u>*Discussion*</u>

5         Initially, Warnshuis defends a negligence claim based on a manufacturing defect and does

6  not address Bausch's arguments regarding a "negligent recall" claim.  Therefore, the Court reads

7  the opposition as meaning that the second cause of action contains only a negligent manufacturing

8  defect claim; the Court will not address any other possible claim identified in Bausch's motion.

9  See <u>Bredesen</u>, 507 F.3d at 1007; <u>Marroquin</u>, 367 F.Supp.3d at 1159; <u>Pecover</u>, 633 F.Supp.2d at

10  984; <u>In re TFT-LCD Antitrust Litig.</u>, 586 F.Supp.2d at 1131.

11           a.      Plausible Negligence Claim

12         Under either a strict liability theory or a negligence theory of products liability, to recover

13  from a manufacturer, a plaintiff must prove that a defect caused injury.  <u>Merrill v. Navegar, Inc.</u>,

14  26 Cal. 4th 465, 478-79 (2001); <u>Trejo v. Johnson & Johnson, Inc.</u>, 13 Cal.App.5th 110, 125

15  (2017).  For a negligence theory, a plaintiff must prove the same elements of a strict liability

16  theory, plus "an additional element, namely, that the defect in the product was due to negligence

17  of the defendant."  <u>Merrill</u>, 26 Cal.4th at 479; <u>Trejo</u>, 13 Cal.App.5th at 125.

18         Here, the defect is adequately alleged.  In addition to the factual allegations that outline

19  Warnshuis's medical history and receipt of a recall letter, the second cause of action alleges that

20  Warnshuis's "use of the subject nasal spray caused [him] to suffer chronic sinus infections and test

21  positive for the potentially life-threatening microbial *pseudomonas aeruginosa*, which has caused

22  and continues to cause [him] serious [harm]."  SAC ¶ 31.  Paragraph 31 confirms what is

23  otherwise apparent in the SAC.  This case is about Warnshuis claiming to suffer chronic sinus

24  infections from the bacteria *pseudomonas aeruginosa*, which allegedly contaminated the nasal

25  spray that he obtained from the defendants.   As discussed above, contamination from the bacteria

26  *pseudomonas aeruginosa* is clearly a defect with the nasal spray.

27         Additionally, the second cause of action alleges that Defendants failed "to maintain

28  adequate separate defined areas to prevent contamination, to establish and follow adequate written

procedures for cleaning and maintenance of equipment, and to investigate unexplained discrepancies in product batches already [distributed] that did not meet specifications."  SAC ¶ 32; see also SAC ¶ 29.  This conduct allegedly occurred despite knowing about prior similar instances of contamination.  See id. at ¶ 29.  Further, the FDA allegedly concluded that the contamination of the nasal spray with *pseudomonas aeruginosa* was because of this manufacturing conduct.  See id. at ¶ 32.[9]  It is unknown what is meant by the allegation that Defendants failed to investigate non-conforming batches that did not meet specifications.  There are myriad specifications that a batch of nasal spray could be required to meet, many of which could have nothing at all to do with microbial contamination (e.g. labels did not adhere properly to the bottle).  Further allegations are necessary to tie the failure to meet a specification with bacterial contamination.  That being said, failing to separate key areas to prevent contamination and failing to establish and follow regular cleaning procedures are deficiencies that could readily be seen to cause bacterial contamination and could be viewed as negligent.  Therefore, the SAC adequately identifies negligent conduct that caused the bacterial contamination of the nasal spray.

Dismissal for failure to plead a plausible negligence claim is inappropriate.

### b.   Allegations Made on Information and Belief

There are a number of allegations made on "information and belief."  Of those allegations, six paragraphs are relevant to the elements of the manufacturing defect claim.

Paragraph 26 identifies all defendants and states that the defendants collectively performed a variety of functions in the manufacturing and distribution process of the nasal spray.[10]  The complete and exact manufacturing and distribution chain would not necessarily be information that is available to Warnshuis.  It would be known, however, to Bausch and the other defendants.  Therefore, alleging Paragraph 26 on information and belief is acceptable.  See Park, 851 F.3d at 928.

---

[9] The Court clarifies that it does not view the alleged conclusion by the FDA as dispositive or even controlling.  Paragraph 32 simply identifies the negligent conduct that created the defect in the nasal spray.

[10] Specifically, Paragraph 26 alleges that Defendants "were engaged in the business of creating, formulating, processing, manufacturing, testing, distributing, selling, inspecting, marketing, warranting, supplying, modifying, providing and/or advertising Ocean Saline Nasal Spray at issue herein."

Paragraph 27 alleges that Defendants owed Warnshuis a duty to perform the various acts of manufacturing and distribution in a reasonable manner.  The existence of a duty is an issue of law, not an issue of fact.  See Vasilenko v. Grace Family Church, 3 Cal.5th 1077, 1083 (2017). Therefore, there is no need to allege the existence of a duty on information and belief, the duty can simply be alleged to exist.  Inclusion of the term "information and belief" does not negate whether a duty actually exists and thus, is harmless.

Paragraph 28 alleges that Defendants knew or should have known (in a nutshell) that the nasal spray was not manufactured and distributed in a reasonable manner.  This is essentially an allegation that goes to the Defendants' mental state.  Rule 9 clarifies that even with respect to heightened pleading requirements for fraud and mistake, "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); see Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 903 (9th Cir. 2013) (holding that an allegation of "willfulness" for the statute of limitations under the Fair Labor Standards Act could be alleged generally). Because mental states/"conditions of the mind" can be alleged generally, there is no need to make the allegation on "information and belief."  However, Paragraph 28's invocation of "information and belief" does not negate the general mental state alleged and thus, is harmless.

Paragraph 29 alleges in part that the Defendants were aware of prior instances of contamination, yet they failed to maintain separate production areas, implement and follow regular cleaning procedures, and failed to investigate non-conforming batches of nasal spray.  The general factual allegations of the SAC do not contain a readily apparent basis to allege either that Defendants were aware of prior instances or that the Defendants failed to take the three manufacturing actions specified.  Further, although the Defendants would likely have knowledge of prior instances of contamination and would certainly know what they did or did not do in their particular role in the manufacturing and distribution chain, it is not clear that the conduct alleged in Paragraph 29 necessarily happened.  This is not a situation (for example) where a Defendant is known to fit within the distribution chain, but it is unknown precisely where in the chain the Defendant fits.  The assertions in Paragraph 29 are particular and Warnshuis must have a reasonable factual basis for making them.  Warnshuis cannot just make the allegation out of thin

air or in the hope that it might actually be correct under the guise of "information and belief." Because the factual basis for Paragraph 29's allegations regarding prior instances of microbial contamination and the failure to separate, clean, and investigate is not identified within the SAC, use of "information and belief" pleading is improper.[11]

Paragraph 31 alleges that Warnshuis's use of the nasal spray caused him to have chronic infections from *pseudomonas aeruginosa*.  The basis for this allegation is readily apparent. Warnshuis's medical history, the timing of the chronic infections, and the recall letter combine to form a sufficient basis to allege causation on information and belief.  See Park, 851 F.3d at 928.

Finally, Paragraph 32 alleges that Defendants were put on notice that their failures regarding production separation, cleaning practices, and investigations of non-conforming batches caused the contamination of the nasal spray.  Paragraph 32 suffers from the same flaw as Paragraph 29.  The assertions in Paragraph 32 are not necessarily true or apparent.  Warnshuis must have a reasonable factual basis for making the assertions.  However, because that factual basis is not clear from the SAC, use of "information and belief" is improper.

In sum, there is an insufficient basis to utilize the "information and belief" procedure with respect to Paragraphs 29 and 32.  Therefore, those paragraphs will be disregarded.  However, these paragraphs demonstrate how negligence caused the defect at issue.  Without them, the SAC no longer contains a plausible negligence claim, which makes dismissal appropriate.

(c)    "Lumping" Allegations

The allegations under the second cause of action use the term "Defendants" followed by a list of each defendant in this case.  In other words, the allegations are made against all defendants. There is no functional difference between using the term "Defendants" and simply listing each defendant one after another.  Further, there is no segregation between the acts of the individual Defendants.  The allegations make a laundry list of possible places within the manufacturing and distribution chain that a defendant may or may not occupy (since the phrase "and/or" ends the

---

[11] Warnshuis's opposition indicates that the recall letter is evidence of FDA involvement.  However, the SAC fails to allege even who sent the letter to Warnshuis.  More information is needed about the FDA's involvement with recall letters in general or in this case in particular, before the Court can accept that the recall notice (the contents of which are generally unknown except for identifying a microbial contaminant) by itself is a sufficient factual basis to support the assertions in Paragraph 29.

list).  The allegations also indicate that every defendant failed to maintain separated areas during the manufacturing process, failed to establish procedures and regularly clean equipment, and failed to investigate non-conforming batches, which caused the bacterial contamination.  Even though it seems highly unlikely that each defendant actually engaged in this conduct, there is no attempt within the second cause of action to link an individual defendant with a specific negligent act.

The failure to identify individual conduct is problematic.  The negligence claim is different from the strict liability manufacturing defect claim.  The only conduct by a defendant that is truly at issue in a strict liability manufacturing defect is the manufacture or distribution of a defective product, i.e. somehow passing on a defective product.  With negligence, a defendant is not liable simply for being within the manufacturing and distribution chain of a defective product.  Rather, a defendant must have engaged in conduct that is negligent and that caused the defect.  See Merrill, 26 Cal.4th at 479; Trejo, 13 Cal.App.5th at 125.  Therefore, although great detail is not required, a defendant must be made aware of its own conduct that is allegedly negligent.

The general rule is that broad allegations that lump multiple defendants together without distinguishing the alleged wrongs or actions between the defendants fail to provide a defendant with adequate notice.  See Inman, 294 F.Supp.3d at 919; Flores, 997 F.Supp.2d at 1103; Gen-Probe, 926 F.Supp. at 961; Gauvin, 682 F.Supp. at 1071.  The allegations under the second cause of action violate this general rule.  It is true that Warnshuis may not know everything about the manufacturing and distribution process of the nasal spray.  But he should have a reasonable basis for believing that a particular defendant engaged or failed to engage in a particular type of negligent act.  Because the second cause of action improperly lumps all defendants together without differentiating the specific conduct of each defendant, dismissal of the second cause of action for this additional reason is appropriate.  See id.

3.      Third Cause of Action – Breach of Warranty

*Defendant's Argument*

In addition to relying on its arguments regarding improper "information and belief" and "defendant-lumping" allegations, Bausch argues that no plausible warranty claim, either express or implied, is pled.  The express warranty claim fails because the exact terms of the warranty are

1   not described, there are no allegations regarding reliance on the warranty, and it is unknown how

2   the breach caused injury.  The implied warranty claim fails because Warnshuis purchased the

3   nasal spray on Amazon, not from Bausch.  Therefore, there is an absence of vertical privity

4   between Bausch and Warnshuis.

5   *Plaintiff's Opposition*

6   In addition to arguing that the allegations are sufficiently supported by his experiences

7   with the nasal spray and that Bausch knows the claims alleged against it, Warnshuis argues that

8   there are plausible warranty claims alleged.  The product name is Ocean Saline Nasal Spray.  That

9   name indicates the intended purpose, as well as the manufacturer's awareness of the intended use,

10  and that a buyer will be purchasing and relying on the manufacturer for the intended use.  In other

11  words, a product called Ocean Saline Nasal Spray was sold to be used as a nasal spray and was

12  expressly and impliedly warranted to be a nasal spray that would not cause bacterial infections.

13  *Discussion*

14  <u>a.</u>      <u>Plausible Warranty Claims</u>

15  Warnshuis's opposition confirms that he is pursuing claims for both implied and express

16  warranties.  The Court will exam both theories separately.

17  <u>(1)</u>      <u>Implied Warranties</u>

18  "[T]he implied warranty of merchantability, which arises by operation of law, is breached

19  when the goods do not conform to the promises or affirmations contained on the container or label

20  or are not fit for the ordinary purposes for which the goods are used."  <u>Martinez v. Metabolife</u>

21  <u>Inter'l., Inc.</u>, 113 Cal.App.4th 181, 189 (2003); <u>see</u> Cal. Civ. Code § 2314.  The implied warranty

22  of merchantability "does not impose a general requirement that goods precisely fulfill the

23  expectation of the buyer.  Instead, it provides for a minimum level of quality."  <u>American Suzuki</u>

24  <u>Motor Corp. v. Superior Ct.</u>, 37 Cal.App.4th 1291, 1296 (1995) (citation omitted).  "Thus, a

25  breach of the implied warranty of merchantability means the product did not possess even the

26  most basic degree of fitness for ordinary use."  <u>Mocek v. Alfa Leisure, Inc.</u>, 114 Cal.App.4t h 402,

27  406 (2003).  "[T]he implied warranty of fitness for a particular purpose is a warranty implied by

28  law when a seller has reason to know that a buyer wishes goods for a particular purpose and is

relying on the seller's skill and judgment to furnish those goods." Martinez, 113 Cal.App.4th at 189; see Cal. Civ. Code § 2315.  Reliance by the plaintiff upon the skill and judgment of the defendant to select a product that is suitable for the plaintiff's needs is the "major question" for an implied warranty of fitness claim.  Keith v. Buchanan, 173 Cal.App.3d 13, 25 (1985).  A "particular purpose" refers to a specific use by the buyer which is peculiar to the buyer or the nature of his business, while an "ordinary purpose" refers to the uses which are customarily made of the product in question.  Mills, 108 Cal.App.4th at 635 n.4; American Suzuki, 37 Cal.App.4th at 1295 n.2.  To recover under an implied warranty theory, a plaintiff must generally be in vertical privity with the defendant.  See Burr v. Sherwin Williams Co., 42 Cal.2d 682, 695 (1954); Jones v. ConocoPhillips Co., 198 Cal. App. 4th 1187, 1201 (2011).  Parties are in vertical privity when they occupy adjoining links in the distribution chain.  Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008); Kennedy v. Baxter Healthcare Corp., 43 Cal.App.4th 799, 810 (1996); Osborne v. Subaru of Am., Inc., 198 Cal.App.3d 646, 656 n.6 (1988).  Although subject to exceptions, see Clemens, 534 F.3d at 1023; Burr, 42 Cal.2d at 695-96, a plaintiff who buys from a retailer, rather than directly from the manufacturer, is not in privity with the manufacturer.  See Clemens, 534 F.3d at 1023; Kennedy, 43 Cal.App.4th at 810; Osborne, 198 Cal.App.3d at 656 n.6.

(A)      Merchantability

With respect to the implied warranty of merchantability, the Court is satisfied that Warnshuis has plausibly alleged that the Ocean Saline Nasal Spray he purchased was not fit for the ordinary purpose of nasal spray.  Again, the allegations indicate that the nasal spray was tainted with the bacteria *pseudomonas aeruginosa*.  This bacterium is known to cause infections of varying severity in humans.  See Footnote 5, *supra*.  In can reasonably be concluded that the alleged bacterial contamination caused the nasal spray to "not possess even the most basic degree of fitness for ordinary use."  Mocek, 114 Cal.App.4th at 406.

However, there is a problem with privity.  The allegations in the SAC show that Warnshuis purchased the nasal spray from Amazon, not Bausch.  Therefore, Bausch and Warnshuis do not occupy adjoining links in the distribution chain, and there is no vertical privity.  Clemens, 534 F.3d at 1023; Kennedy, 43 Cal.App.4th at 810; Osborne, 198 Cal.App.3d at 656 n.6.

California courts have recognized an exception to the privity requirement in cases against the manufacturer of foodstuffs and "medicines."  See Clemens, 534 F.3d at 1023; Gottsdanker v. Cutter Laboratories, 182 Cal. App. 2d 602, 608 (1960).  The Court finds the analysis of *Gottsdanker*, which eliminated the privity requirement for implied warranty claims against a manufacturer of a human vaccine, is relevant to the nasal spray at issue.  After reviewing *Klein v. Duchess Sandwich Co., Ltd.*, 14 Cal.2d 272 (1939), a case that eliminated the privity requirement for warranty claims involving foodstuffs, *Gottsdanker* explained:

> In view of the established California rule that the consumer of a food product may recover from the manufacturer upon implied warranty, is there any reason to apply a different rule to the vaccine here involved? We think not. The vaccine is intended for human consumption quite as much as is food. We see no reason to differentiate the policy considerations requiring pure and wholesome food from those requiring pure and wholesome vaccine. Some significance may attach to the fact that *Klein* (p. 277) quotes a decision ( *Rachlin v. Libby-Owens-Ford Glass Co.*, 96 F.2d 597, 600 [(2d Cir. 1938]) which states that the privity exception extends to "medicines and foodstuffs." *Klein* also relies upon the several pure food and drug acts as indicating the public policy which underlies the rule. We can conceive of no reason for applying the rule to foodstuffs which does not equally extend to drugs. The vaccine here involved is, like food products, designed solely for introduction into the body of a human being.

> The fact that the entry is made by injection rather than ingestion in no way alters the premise that each is for human consumption -- each enters the human system. In fact, the digestive system has means of rejecting or minimizing the effects of many toxic compounds taken orally. Such defenses are much less available as against harmful elements introduced into the system by hypodermic injection.

Gottsdanker, 182 Cal.App.2d at 607.

*Gottsdanker*'s analysis and observations would seem to apply equally to the nasal spray at issue.  The Court is aware of no other purpose for nasal spray than for the introduction of the spray into a human nasal cavity to alleviate a condition or symptom.  That is, nasal spray is "designed solely for introduction into the human body."  Id.  Moreover, it is well known that bacteria may enter a human body through the nose and cause an infection.  See http://needtoknow.nas.edu/id/infection/encountering-microbes/entering-the-human-host/.  It seems that bacteria tainted nasal spray represents a significant danger to humans as it enters an area of the body that may be particularly susceptible to infection.  Cf. Gottsdanker, 182 Cal.App.2d at 607 (noting that a material injected into the body could pose a greater risk than a substance ingested through the digestive system).  Accordingly, the Court finds that the rationale of *Gottsdanker* likely applies to

the nasal spray at issue.  Therefore, at this time, the Court will not find that a lack of privity

defeats an implied warranty of merchantability claim against the manufacturer of the Ocean Saline

Nasal Spray.

Notwithstanding the above, dismissal of the implied warrant of merchantability claim

remains appropriate as to Bausch and PQM.  Again, the allegations show that Amazon, not

Bausch or PQM, is in vertical privity with Warnshuis.  What the Court cannot tell is exactly who

Warnshuis contends is the manufacturer of the nasal spray.  As mentioned above, the SAC

includes a laundry list of various links in the supply chain.  "Manufacturer" is included in this list,

but it is not affirmatively and particularly alleged against either Bausch or PQM.  Given the nature

of a strict products liability claim, the Court was willing to accept the laundry list of links because

the links of "manufacturer" and "distributor" were included in the list and the overall effect was to

allege that Bausch and PQM were part of the manufacturing and distribution chain.  However,

simply being part of the distribution chain is not enough for the merchantability warranty claim.

Because the privity requirement is eliminated for the manufacturer, it is incumbent upon

Warnshuis to clearly and expressly identify who the manufacturer is.  The laundry list of links in

the chain of distribution that ends with the phrase "and/or" is insufficient.  Therefore, because the

SAC does not clearly identify Bausch or PQM as the manufacturer, dismissal of the implied

warranty of merchantability claim as to Bausch and PQM is appropriate.

(B)     Fitness for a Particular Purpose

No plausible claim for breach of the implied warranty of fitness is stated.  First, in order to

plausibly allege an implied warranty of fitness claim, a plaintiff must identify the intended or

particular purpose of the product.  Marroquin, 367 F.Supp.3d at 1165; see also McMahon v. Take-

Two Interactive Software, Inc., 745 F. App'x 786, 787 (9th Cir. 2018).  The particular purpose

that Warnshuis had for the nasal spray is not identified.  The allegations instead seem to indicate

that Warnshuis merely used the nasal spray as a nasal spray.  That is, he used the product in the

common and ordinary way in which nasal sprays are customarily used.  Such use implicates the

warranty of merchantability, not the warranty of fitness.  See Birdsong v. Apple, Inc., 590 F.3d

955, 958 (9th Cir. 2009); Mills, 108 Cal.App.4th at 635 n.4; American Suzuki, 37 Cal.App.4th at

1   1295 n.2.  Second, no allegations indicate that Warnshuis relied on the skill and judgment of any

2   Defendant, let alone Bausch, to select the Ocean Saline Nasal Spray for him.  Therefore, dismissal

3   of the implied warranty of fitness claim is appropriate.

4                         (2)     Express Warranty

5          An express warranty is a "contractual promise from the seller that the goods will conform

6   to the promise."  Dagher v. Ford Motor Co., 238 Cal.App.4th 905, 928 (2015).  A plaintiff is

7   required to allege "the exact terms of the warranty."  In re Sony PS3 "Other OS" Litig., 551 F.

8   App'x 916, 919 (9th Cir. 2014) (quoting Williams v. Beechnut Nutrition Corp., 185 Cal.App.3d

9   135 (1986)); Augustine v. Talking Rain Bev. Co., 386 F.Supp.3d 1317, 1331 (S.D. Cal. 2019);

10  Colgate v. JUUL Labs, Inc., 345 F.Supp.3d 1178, 1195 (N.D. Cal. 2018); Van Lengen v. General

11  Mills, Inc., 185 F.Supp.3d 1213, 1222 (E.D. Cal. 2016).  Further, vertical privity generally is still

12  required for express warranty claims.  See Burr, 42 Cal.2d at 695; Jones, 198 Cal.App.4th at 1201.

13  However, there are exceptions to the vertical privity requirement, including when a plaintiff relies

14  on the manufacturer's written representations in labels or advertising materials.  Burr, 42 Cal.2d at

15  696; Fieldstone Co. v. Briggs Plumbing Prods., Inc., 54 Cal.App.4th 357, 369 n.10 (1997); Fundin

16  v. Chicago Pneumatic Tool Co., 152 Cal.App.3d 951, 957 (1984).

17         Here, there are two significant problems with an express warranty claim.  First, the SAC

18  does not identify the specific terms of any express warranty made by any Defendant, let alone

19  Bausch.  This failure renders any express warranty claim conclusory and implausible.  See In re

20  Sony PS3 "Other OS" Litig., 551 F. App'x at 919.  Second, as discussed above, Bausch (as well as

21  PQM) is not in vertical privity with Warnshuis.  Although it is possible that Warnshuis can meet

22  an exception to this requirement with respect to the manufacturer of the Ocean Saline Nasal Spray,

23  the allegations are insufficiently specific for the Court to view Bausch as the manufacturer.

24         Warnshuis contends that the name of the product has the term "Nasal Spray" in it and that

25  term creates a warranty.  Relying on the name of a product is similar to relying on the label of a

26  product, which can be an exception to the privity requirement.  However, Warnshuis cites no

27  authority that the name of a product like "Ocean Saline Nasal Spray" can or does create a type of

28  express warranty or excuse the privity requirement.  Theoretically it may be possible for a

product's name to create an express warranty.  But here, the mere fact that "nasal spray" is part of

Ocean Saline Nasal Spray's name does not represent an assertion of fact or promise regarding the

product.  See Cal. Unif. Comm. Code § 2313 (defining an express warranty in part as any

"affirmation of fact or promise made by the seller to the buyer which relates to the goods and

comes part of the basis of the bargain . . ."); Colgate, 345 F.Supp.3d at 1194 (noting that seller

must makes statements that amount to "an affirmation of fact or promise relating to the goods

sold"); Keith, 173 Cal.App.3d at 20 (noting the distinction between an "affirmation of fact or

promise or description of the goods" with a seller's "opinion or commendation.").  All that can be

said about including the term "nasal spray" in the name of "Ocean Saline Nasal Spray" is that the

product at issue is in fact a nasal spray.  There is no dispute that the product at issue is a nasal

spray, albeit one tainted with bacteria.  Therefore, the fact that "Ocean Saline Nasal Spray" has the

term "nasal spray" in its name is irrelevant for purposes of alleging an express warranty claim.

In sum, because there is no plausible express warranty claim alleged against any defendant,

dismissal is appropriate.

### b.    Allegations Made on Information and Belief

There are three paragraphs made on "information and belief" that are relevant to the

various breach of warranty claims.

First, Paragraph 40 alleges that that Defendants expressly and/or impliedly warranted that

the nasal spray was fit for purpose and free from defects.  See SAC ¶ 40.  The implied warranties

of fitness and merchantability arise by operation of law.  See Martinez, 113 Cal.App.4th at 189.

Therefore, there is no need to allege the existence of an implied warranty on information and

belief, the implied warranties can simply be alleged to exist.  Inclusion of the term "information

and belief" does not negate the existence of an implied warranty of fitness or merchantability.

For purposes of an express warranty claim, however, Warnshuis should have direct

personal knowledge of an express warranty.  This is because Warnshuis would have either read the

warranty or been told about the warranty by a defendant.  See Norcia v. Samsung Telecoms. Am.,

LLC, 845 F.3d 1279, 1288 (9th Cir. 2017) ("A seller is bound by any express warranties *given to*

*the buyer*, including statements in written warranty agreements, advertisements, oral

representations, or presentations of samples or models.") (emphasis added) (citing <u>Keith</u>, 173
Cal.App.3d at 20).  An express warranty is not peculiarly within the possession or control of a
defendant, and no allegations indicate what was expressly warranted.  Therefore, use of
information and belief in Paragraph 40 with respect to an express warranty claim is improper.

Paragraphs 41 and 42 allege that the nasal spray was not free from defects, was imminently
dangerous to consumers and users, was not merchantable, and not fit for purpose.  The factual
basis for Paragraph 41 is Warnshuis's alleged medical history, the recall letter identifying possible
bacterial contamination, and the allegation that the nasal spray was contaminated with
*pseudomonas aeruginosa*.  The bacterial contamination can reasonably be viewed as making the
nasal spray defective, dangerous, unmerchantable, and unfit for any purpose (particular or
ordinary) as a nasal spray.  Therefore, there is a sufficient factual basis identified for making these
allegations on information and belief.  <u>See</u> <u>Park</u>, 851 F.3d at 928.

Finally, Paragraph 43 alleges that Warnshuis used the nasal spray as directed or in a
reasonably foreseeable manner.  <u>See</u> SAC ¶ 43.  Paragraph 43 is not the proper subject of
information and belief allegations.  There are no allegations that describe precisely how Warnshuis
used the nasal spray, and no defendant knows exactly how Warnshuis used the spray.  Warnshuis,
and likely only Warnshuis, is the person who knows how he actually used the nasal spray.  If he
used it as directed or in a reasonably foreseeable way, then he needs to expressly make that
allegation without qualification.  Use of information and belief under Paragraph 43 is improper.

In sum, use of "information and belief" with respect to one part of Paragraph 40 and the
entirety of Paragraph 43 is improper and those paragraphs do not support any warranty claim.

c. "Lumping" Allegations

The entirety of the allegations under the third cause of action do not identify any defendant
by name or distinguish the conduct of any defendant.  Instead, each allegation under the third
cause of action uses the term "Defendants."  These allegations fail to provide Bausch or any
defendant with adequate notice of their specific conduct that allegedly caused harm.  This
shortcoming is enhanced because, unlike a strict liability manufacturing defect claim, it is not
enough for a defendant to simply be in the chain of distribution.  A defendant must either be in

1   vertical privity with Warnshuis or there must be recognized exception and the exception generally

2   applies to the manufacturer.  Because the allegations improperly lump all defendants together

3   without differentiating between the conduct of individual defendants, there is not adequate notice

4   to the individual defendants.  See Inman, 294 F.Supp.3d at 919; Flores, 997 F.Supp.2d at 1103;

5   Gen-Probe, 926 F.Supp. at 961; Gauvin, 682 F.Supp. at 1071.   Improper "lumping" makes

6   dismissal of the entirety of the third cause of action appropriate.

7          4.      Prayer for Punitive Damages

8          *Defendant's Argument*

9          Bausch argues that the prayer seeks punitive damages based conduct done with "malice,

10  fraud, and oppression."  However, the SAC does not meet the heightened pleading standards for

11  fraudulent conduct, including failing to differentiate what specific conduct by Bausch was

12  fraudulent. Further, the SAC does not allege what conduct by Bausch was malicious or oppressive.

13         *Plaintiff's Opposition*

14         Warnshuis argues that his complaint does not need to even include a prayer for punitive

15  damages in order to give proper notice to a defendant.  Therefore, there is no need to provide

16  detailed factual allegations to support a demand for punitive damages.

17         *Discussion*

18         Punitive damages in California may be awarded in conjunction with non-contract claims if

19  a plaintiff demonstrates by clear and convincing evidence that a defendant "has been guilty of

20  oppression, fraud, or malice . . . ."  Cal. Civ. Code  § 3294(a); Roby v. McKesson, 47 Cal.4th 686,

21  712 (2009).  "'Malice' means conduct which is intended by the defendant to cause injury to the

22  plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious

23  disregard of the rights or safety of others."  Cal. Civ. Code § 3294(c)(1); Roby, 47 Cal.4th at 712;

24  see also Simon v. San Paolo U.S. Holding Co., Inc., 35 Cal.4th 1159, 1181 (2005) ("At a

25  minimum, California law requires conduct done with 'willful and conscious disregard of the rights

26  or safety of others' . . . .").  "'Oppression' means despicable conduct that subjects a person to cruel

27  and unjust hardship in conscious disregard of that person's rights."  Cal. Civ. Code § 3294(c)(2);

28  Roby, 47 Cal.4th at 712.  "'Fraud' means an intentional misrepresentation, deceit, or concealment

1  of a material fact known to the defendant with the intention on the part of the defendant of thereby

2  depriving a person of property or legal rights or otherwise causing injury."  Cal. Civ. Code §

3  3294(c)(3); Roby, 47 Cal.4th at 712.

4       Warnshuis has relied on several district court cases that have found challenges to punitive

5  damages through Rule 12(b)(6) are improper.  Other district courts have held to the contrary and

6  permit challenges to the sufficiency of the underlying allegations that support punitive damages to

7  be made through Rule 12(b)(6).  E.g. Appel v. Boston Nat'l Title Agency, LLC, 2020 U.S. Dist.

8  LEXIS 101692, *25 (S.D. Cal. June 10, 2020); Bass v. County of San Bernardino, 2020 U.S. Dist.

9  LEXIS 61192, *26 (C.D. Cal. Jan. 23, 2020); In re Yahoo! Inc. Customer Data Sec. Breach Litig.,

10  313 F.Supp.3d 1113, 1147 (N.D. Cal. 2018); Oushana v. Lowe's Cos., Inc., 2017 U.S. Dist.

11  LEXIS 182852, *6 (E.D. Cal. Mar. 22, 2017).  Because the Ninth Circuit has not definitively

12  settled the issue, the Court will continue to follow the line of cases that permit Rule 12(b)(6)

13  motions to challenge the factual sufficiency of a punitive damages request.  See id.; Kelley v.

14  Correction Corp. of Am., 750 F.Supp.2d 1132, 1146 (E.D. Cal. 2010); Parker v. Fidelity Life Ins.

15  Co., 2006 U.S. Dist. LEXIS 56724, *17 (E.D. Cal. July 26, 2007).  Therefore, while malice, intent

16  and knowledge (and other mental states) may be alleged generally as provided by Rule 9(b),

17  factual allegations must still be sufficient to meet the standard of *Iqbal* to adequately support a

18  request for punitive damages.  See Coppola v. Smith, 982 F.Supp.2d 1133, 1144 (E.D. Cal. 2013);

19  Kelley, 750 F.Supp.2d at 1147; cf. Mayfield v. NASCAR, 674 F.3d 369, 377 (4th Cir. 2012)

20  (discussing allegations of malice in the context of a defamation claim).  Further, since punitive

21  damages are a remedy, they are dependent on a viable cause of action for an underlying tort.

22  Marroquin, 367 F.Supp.3d at 1168; 569 E. County Blvd., LLC v. Backcountry Against the Dump,

23  Inc., 6 Cal.App.5th 426, 430 n.3 (2016).

24       Here, there is only one viable cause of action in the SAC, the first cause of action for strict

25  products liability manufacturing defect.  As relevant to punitive damages, the SAC alleges that

26  Bausch and PQM knew of the subject bacterial contamination and knew about two key failures in

27  the manufacturing process of the nasal spray (failing to segregate manufacturing areas and failing

28  to establish and follow cleaning procedures), yet continued to manufacture or distribute the nasal

spray that caused Warnshuis's injuries.  See SAC ¶ 21.  Considering the nature of the nasal spray and the danger posed by *pseudomonas aeruginosa*, the allegations plausibly support a finding of malice, that is, an act that was willful and in conscious disregard of the rights or safety of others. See Cal. Civ. Code § 3924(c)(1); Simon, 35 Cal.4th at 1181.

Bausch argues that the allegations do not sufficiently differentiate its conduct from PQM's conduct.  However, the nature of a strict liability manufacturing defect claim is that a defendant who is sufficiently within the manufacturing and distribution chain is liable for passing on a defective product that causes harm to a consumer.  The Court has found that the first cause of action can reasonably be read as alleging that Bausch and PQM are sufficiently within the manufacturing and distribution chain and that they both passed on a defective product.  Paragraph 21 essentially alleges that both Bausch and PQM knew about the bacterial contamination (as well as the manufacturing deficiencies), but they still passed on the subject nasal spray.  In the absence of specific allegations as to what links within the manufacturing and distribution chain that Bausch and PQM occupy, it is the knowledge of the bacterial contamination that makes the "passing on" of the nasal spray malicious.[12]  Separate paragraphs, one for Bausch and one for PQM, is not necessary to allege that both Defendants knew of the contamination.  Bausch is reasonably aware that the SAC alleges that Bausch is a link within the manufacturing and distribution chain who knew it was passing on a dangerously defective (bacterially contaminated) product.  Thus, Bausch has sufficient notice of a basis for punitive damages through Paragraph 21.[13]

In sum, dismissal of the punitive damages claim against Bausch is inappropriate.

---

[12] The Court notes that the first cause of action (including Paragraph 21) contains allegations regarding concealment and failing to warn about the contamination.  A manufacturing defect involves a non-conforming product that causes injury.  Liability attaches once the defective product is passed on by the defendant and causes harm to a plaintiff, irrespective of any efforts to warn the public.  It is not clear at this time that allegations regarding a failure to warn or concealment are sufficiently related to the cause of action for manufacturing defect to support an award of punitive damages.  Such conduct arguably involves duties or torts that are separate from a manufacturing defect claim.  However, because the Court has found that the allegation of knowledge of the bacterial contamination is sufficient to support punitive damages, and because the parties have not addressed whether concealment or failing to warn are sufficiently related to the manufacturing defect claim for purposes of punitive damages, the Court will simply note that there are concerns over some of the additional allegations under the first cause of action.

[13] The Court notes that a different result would be reached for the other claims alleged.  As discussed above, it is not enough to be a link in the manufacturing and distribution chain for Warnshuis's other claims.  Therefore, for any other cause of action to support punitive damages, the allegations must differentiate between defendants and explain what each defendant did that could reasonably support a finding of malice, oppression, or fraud under Civil Code § 3294.

1          5.     Leave to Amend

2          Warnshuis requests that if the Court finds merit to Bausch's arguments, then it should be

3   granted leave to amend.  This is the first time that the Court has dismissed any part of any

4   Complaint, and it is not clear that amendment would be futile.  Therefore, the dismissal of the

5   second and third causes of action will be with leave to amend.  See Ebner, 838 F.3d at 962;

6   Garmon, 828 F.3d at 842.

7

8   **II.     Plaintiff's Motion to Amend**

9          The Court is dismissing the second and third causes of action with leave to amend.  In one

10  respect, this moots Warnshuis's request.  However, Warnshuis wishes to add a defendant and has

11  included a proposed third amended complaint ("TAC").  The proposed TAC essentially contains

12  the same allegations as the SAC, but it includes a new defendant.

13         It is permissible at this stage in the proceedings (no scheduling order has yet to be issued)

14  to permit Warnshuis to add a new defendant.  However, the Court will not permit Warnshuis to

15  file the proposed TAC.  The proposed TAC would suffer from the same deficiencies that led to the

16  dismissal of the SAC's second and third causes of action.  Therefore, Warnshuis will be directed

17  to file a new third amended complaint that is consistent with the analysis of this order.  The new

18  third amended complaint should not improperly lump defendants together, should eliminate use of

19  the term "information and belief" or provide additional factual allegations that support

20  "information and belief" with respect to the paragraphs discussed above, and pare down

21  unnecessary allegations and laundry lists.  Additionally, the second and third causes of action each

22  incorporate by reference all prior allegations.  That is an improper pleading technique that does not

23  provide adequate notice to a defendant.  Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d

24  1313, 1321-23 (11th Cir. 2015); Deerpoint Grp., Inc. v. Agrigenix LLC, 334 F.Supp.3d 1207,

25  1234 n.15 (E.D. Cal. 2018).  If particular preceding paragraphs are intended to support a cause of

26  action, then Warnshuis should incorporate by reference only those paragraphs.

27  //

28  //

# **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.  Defendant Bausch's motion to dismiss (Doc. No. 21) IS GRANTED as to the second and third causes of action and those causes of action are DISMISSED with leave to amend;

2.  Defendant Bausch's motion to dismiss is DENIED with respect to the first cause of action and the associated request for punitive damages;

3.  Plaintiff's motion to amend (Doc. No. 26) is GRANTED in part in that Plaintiff may file a third amended complaint that adds a new defendant and that is consistent with the analysis of this order;

4.  Plaintiff may file his third amended complaint no later than twenty-one (21) days from service of this order; and

5.  If Plaintiff fails to file an amended complaint, then leave to amend shall automatically be withdrawn without further order, and Defendants shall file an answer to the Second Amended Complaint within twenty-eight (28) days of service of this order.

IT IS SO ORDERED.

Dated:   June 18, 2020

_____

SENIOR  DISTRICT  JUDGE