# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PATRICK WARNSHUIS,** | **CASE NO. 1:19-CV-1454 AWI BAM** |
| **Plaintiff** | |
| v. | **ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO AMEND** |
| **BAUSCH HEALTH U.S., LLC f/k/a Valeant Pharmaceuticals North America, LLC, et al.,** | (Doc. No. 39) |
| **Defendants** | |

This is a products liability case that stems from the ingestion of an allegedly tainted nasal spray, "Ocean Saline Nasal Spray," by Plaintiff Patrick Warnshuis ("Warnshuis"). The operative complaint is the Third Amended Complaint ("TAC"), which was filed after the Court granted in part a Rule 12(b)(6) motion. Currently before the Court is Defendant Bausch Health U.S., LLC's ("Bausch") Rule 12(b)(6) motion to dismiss. For the reasons that follow, Bausch's motion will be granted in part and denied in part.

## BACKGROUND

From the Complaint, in April 2018, Warnshuis bought Ocean Saline Nasal Spray through Defendants Amazon.com, LLC and Amazon.com, Inc. (collectively "Amazon") and Americarx. After using the nasal spray, Warnshuis began suffering chronic and unexplained sinus infections that would not respond to treatment.

In August 2018, Warnshuis received a recall letter that the nasal spray that he had purchased through Amazon and Americarx could have microbial contamination, namely the bacteria *pseudomonas aeruginosa*. The recall had been requested by Defendant Product Quest

Manufacturing, LLC "PQM", who was described as the manufacturer.  PQM had requested that Bausch recall all lots of Ocean Saline Nasal Spray because the lots could be contaminated with *pseudomonas aeruginosa*.

Warnshuis continued to suffer sinus infections.  Subsequent culture tests returned positive results for *pseudomonas aeruginosa* bacterial infections.  The bacterial infections have caused and continue to cause Warnshuis serious injury and damages.

## **RULE 12(b)(6) FRAMEWORK**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015).  In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015).  The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).  To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall

short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960. The Ninth Circuit has distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

## DEFENDANT'S MOTION

*Defendant's Argument*

Bausch argues that dismissal of the second and third causes of action (for negligence and breach of warranty) is appropriate for several reasons. First, contrary to the first dismissal order, the TAC continues to improperly lump all defendants together without differentiating Bausch from any other defendant. This defective pleading does not provide adequate notice of what Bausch allegedly did wrong. Second, to the extent the TAC attempts to allege a negligent recall claim or a negligent failure to warn, those claims fail to allege the requisite elements. Third, the TAC fails to allege a plausible breach of express warranty claim because the TAC fails allege the exact terms of any warranty made by Bausch. Finally, the TAC contains no plausible breach of implied warranty claim because the TAC does not establish vertical privity between Bausch and Warnshuis, and the TAC also fails to adequately allege that Bausch is a manufacturer for purposes of a vertical privity exception. Because these problems were noted in the prior dismissal order yet not corrected in the TAC, Bausch argues that dismissal of the second and third claims against it should be with prejudice.

*Plaintiff's Opposition*

Warnshuis argues that he is unaware of the manufacturing and distribution process of the Ocean Saline Nasal Spray. The only awareness that he has is what can be gleaned from the Amazon website, the recall information provided to him, and the product packaging. However, additional factual allegations were included in Paragraphs 29 and 32 with respect to each defendant's act of negligence and Paragraphs 40, 43, and 44 with respect to the warranty claim. The TAC specifically alleges that Bausch negligently formulated, processed, manufactured and sold the nasal spray and was aware of prior contamination, yet continued to manufacture a defective product. Bausch's awareness of prior contamination but failure to fix the problem it had been alerted to by the FDA renders its conduct negligent. Bausch's failure to take steps to correct the problem differentiates the strict liability claim against Bausch and provides Bausch with adequate awareness of what it did wrong. Because Warnshuis is unaware of which defendants were responsible for which steps in the manufacture and distribution process, the TAC has provided more particularity where possible. With respect to the warranty claims, Warnshuis explains that he has alleged the information that he has regarding the manufacturer of the nasal spray. The recall notice states that PQM was the manufacturer, but the nasal spray box says that Bausch is the manufacturer. Further, the TAC identifies the express warranty on the box that the spray "was intended as a nasal spray to treat dryness inside the nose." Under *Gottsdanker*, because PQM and Bausch are identified as the manufacturers, the privity requirement has been satisfied.

*Relevant Allegations*

As referenced by parties, the TAC in relevant part alleges:

> 29. Defendants [Bausch, PQM, Amazon, Americarx, and Does], and each of them, negligently, carelessly, and/or recklessly created, formulated, processed, manufactured, tested, distributed, sold, inspected, marketed, warranted, supplied, modified, provided, and/or advertised the subject nasal spray in that the nasal spray was capable of causing and in fact did cause personal injuries to the consumer and/or user thereof while being used as directed and in a manner reasonably foreseeable, thereby rendering the same unsafe and dangerous for use by the consumer, user, and/or bystander. Defendants [PQM and Bausch] were aware of prior similar contamination because they had been previously notified by the United States Food and Drug Administration of similar contamination but did not instigate the subject recall until in or about late August or early September 2018,

4

and which led to the recall notice received by [Warnshuis] indicating an earlier recall of [PQM and Bausch] products and stating that the recall was being conducted with the knowledge of the [FDA]. Defendants Americarx [and Amazon] were negligent by continuing to sell or otherwise offer to facilitate the sale of the subject product despite knowledge of the prior recall notices and involvement of the [FDA].
…..

32. Prior to August 2018, Defendants [Bausch, PQM, Amazon, Americarx, and Does], and each of them, were aware of the high danger and the severity of the risk of injury or death to consumers and users of the subject nasal spray. [P]rior to that time, Defendants [Bausch, PQM, Amazon, Americarx, and Does], and each of them, were put on notice by the [FDA] that the subject nasal spray and other similar products were contaminated with microbes based on the recall notice received by [Warnshuis] stating that the recall of the Ocean Saline Nasal Spray was not the first recall due to the microbial contamination of [PQM] and Bausch products or the first recall for such products issued by [Amazon] and Americarx.
…..

40. [All Defendants] expressly and/or impliedly warranted to Warnshuis and to that class of people who would normally be expected to use, maintain and/or operate the subject nasal spray, that the product was fit for the purpose for which it was to be used and was free from formulary, design, and manufacturing defects to consumers and users thereof. Moreover, Defendant [Bausch] represented itself as the manufacturer of the product on the product packaging and that the product was intended as a nasal spray to treat dryness inside the nose.
….

43. [Warnshuis] used the subject nasal spray at issue herein at all times as directed and/or in a reasonably foreseeable manner, and [Bausch] was named on the product sold to [Warnshuis] in a way that any reasonable consumer would understand to be the manufacturer.

44. Prior to August 2018, Defendants [Bausch, PQM, Amazon, Americarx, and Does] were aware of the high danger and the severity of the risk of injury or death to consumers and users of the subject nasal spray. Prior to that time, Defendants [Bausch and PQM] were aware of contamination and danger but failed to timely recall the subject nasal spray or adequately advise or warn purchasers or potential users by providing warnings of the hazards and severe risk of injury or death from use of the subject nasal spray.

TAC ¶¶ 29, 32, 40, 43, 44.

*Discussion*

1. <u>Third Cause of Action – Breach of Express and Implied Warranties</u>

The TAC indicates that Warnshuis is bringing express and implied warranty claims. Bausch's substantive attack against this cause of action is two-fold: (1) there are insufficient allegations of privity, and (2) the terms of an express warranty have not been adequately alleged.

    a. <u>Vertical Privity</u>

In California, vertical privity is generally required for both express and implied warranty

5

1 claims. See Burr v. Sherwin Williams Co., 42 Cal.2d 682, 695 (1954); Jones v. ConocoPhillips
2 Co., 198 Cal. App. 4th 1187, 1201 (2011).  Parties are in vertical privity when they occupy
3 adjoining links in the distribution chain. Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023
4 (9th Cir. 2008); Kennedy v. Baxter Healthcare Corp., 43 Cal.App.4th 799, 810 (1996); Osborne v.
5 Subaru of Am., Inc., 198 Cal.App.3d 646, 656 n.6 (1988).  For express warranties, advertising
6 materials or labeling on a package may be sufficient to excuse the privity requirement with respect
7 to the manufacturer. See Burr, 42 Cal.2d at 696; Fieldstone Co. v. Briggs Plumbing Prods., Inc.,
8 54 Cal.App.4th 357, 369 n.10 (1997).  For the implied warranty of merchantability,[1] the vertical
9 privity requirement is excused with respect to manufacturers of foodstuffs and "medicines."
10 Gottsdanker v. Cutter Laboratories, 182 Cal. App. 2d 602, 607 (1960)

11    Here, Bausch contends that the TAC is inconsistent and improperly contradictory because
12 the TAC indicates that both PQM and Bausch are the "manufacturers" of the Ocean Saline Nasal
13 Spray.  However, as clarified by the opposition and indicated by the TAC itself, the recall letter
14 indicates that PQM is the manufacturer, and the nasal spray box indicates that Bausch is the
15 manufacturer.  The precise manufacturing and distribution chains of the nasal spray is unknown to
16 Warnshuis.  Warnshuis has two sources of information regarding who the manufacturer of the
17 nasal spray may be, and those sources yield two different answers.  Under these circumstances, the
18 Court detects nothing improper about Warnshuis alleging that PQM and Bausch are
19 "manufacturers" of the Ocean Saline Nasal Spray.  Under the Federal Rules of Civil Procedure,
20 Warnshuis may make alternative or inconsistent claims in the TAC. See Fed. R. Civ. P. 8(d).
21 Therefore, the Court is satisfied that the TAC plausibly alleges that both Bausch and PQM are
22 manufactures of the Ocean Saline Nasal Spray at issue.  As a result, because the Ocean Saline
23 Nasal Spray is sufficiently analogous to foodstuffs and "medicines" under the rationale of
24 *Gottsdanker*, and because Warnshuis has identified representations made on the nasal spray's
25 packaging, the vertical privity requirement for an express warranty claim and an implied warranty

---

[1] "[T]he implied warranty of merchantability, which arises by operation of law, is breached when the goods do not conform to the promises or affirmations contained on the container or label or are not fit for the ordinary purposes for which the goods are used." Martinez v. Metabolife Inter'l., Inc., 113 Cal.App.4th 181, 189 (2003); see Cal. Civ. Code § 2314.

6

of merchantability claim is satisfied as to Bausch. See Burr, 42 Cal.2d at 696; Fieldstone, 54 Cal.App.4th at 369 n.10; Gottsdanker, 182 Cal.App.2d at 607. Dismissal for failure to satisfy the vertical privity requirement is inappropriate.

                b.        Express Warranty

An express warranty is a "contractual promise from the seller that the goods will conform to the promise." Dagher v. Ford Motor Co., 238 Cal.App.4th 905, 928 (2015). A plaintiff is required to allege "the exact terms of the warranty." In re Sony PS3 "Other OS" Litig., 551 F. App'x 916, 919 (9th Cir. 2014) (quoting Williams v. Beechnut Nutrition Corp., 185 Cal.App.3d 135 (1986)); Augustine v. Talking Rain Bev. Co., 386 F.Supp.3d 1317, 1331 (S.D. Cal. 2019); Colgate v. JUUL Labs, Inc., 345 F.Supp.3d 1178, 1195 (N.D. Cal. 2018); Van Lengen v. General Mills, Inc., 185 F.Supp.3d 1213, 1222 (E.D. Cal. 2016).

Here, the TAC alleges that the nasal spray box indicated that the product was "intended as a nasal spray to treat dryness inside the nose." TAC ¶ 40.[2] The Court cannot find that this is a plausible allegation of an express warranty. The quoted language merely identifies what kind of nasal spray the Ocean Saline Nasal Spray is, i.e. one intended to treat nasal dryness (as opposed to perhaps a nasal spray that is intended to treat seasonal allergies). The quoted language does not make any promises about the nasal spray being free of contaminants, about the spray's performance, or about any other qualities or characteristics of the nasal spray other than that it treats dryness. Further, there are no allegations that the Ocean Saline Nasal Spray purchased by Warnshuis failed to treat nasal dryness or that the failure to treat nasal dryness resulted in harm to Warnshuis. Instead, the problem with the nasal spray was that it was tainted with a harmful bacteria and that harmful bacteria infected Warnshuis after he used the spray. The contamination is something that makes the Ocean Saline Nasal Spray unfit for any purpose as a nasal spray. It is apparent to the Court that Warnshuis is attempting to stretch what is clearly a plausible merchantability claim into an express warranty claim. That is improper.

Because Warnshuis has not adequately identified an express warranty made by Bausch (or any Defendant), dismissal of the express warranty claim is appropriate.

---

[2] The Court is unaware of any other allegation in the TAC that could arguably be construed as an express warranty.

### 2. Second Cause of Action – Negligence

The second cause of action is entitled in part "Products Liability – Negligence." Under either a strict liability theory or a negligence theory of products liability, to recover from a manufacturer, a plaintiff must prove that a defect caused injury. Merrill v. Navegar, Inc., 26 Cal. 4th 465, 478-79 (2001); Trejo v. Johnson & Johnson, Inc., 13 Cal.App.5th 110, 125 (2017). For a negligence theory, a plaintiff must prove the same elements of a strict liability theory, plus "an additional element, namely, that the defect in the product was due to negligence of the defendant." Merrill, 26 Cal.4th at 479; Trejo, 13 Cal.App.5th at 125. Therefore, to plausibly allege a negligence products liability claim, a complaint needs to make factual allegations that show a defendant engaged in conduct that can reasonably be viewed as negligent, a defect in the product was due to the defendant's negligence, and the defect caused injury to the plaintiff. Cf. id.

Here, the only defect that is clearly apparent from the TAC is contamination of the nose spray with the harmful bacteria *pseudomonas aeruginosa*.[3] The TAC alleges that Warnshuis used the Ocean Saline Nasal Spray and has suffered chronic infections from *pseudomonas aeruginosa* ever since. Thus, the TAC clearly alleges that Warnshuis has been injured from a defect in the nasal spray. The question is whether the TAC adequately alleges that Bausch engaged in negligent conduct that resulted in the bacterial contamination. The answer is no.

Warnshuis's opposition contends that Paragraph 29 of the TAC explains that Bausch was aware of previous contamination problems from the FDA, yet it failed to take appropriate steps to fix that problem. However, contrary to the opposition, the TAC does not actually allege that Bausch failed to fix the problem, took no steps to fix the problem, or explain how Bausch's conduct was negligent with respect to fixing the contamination problem. To be sure, the TAC

---

[3] As it did in the first motion to dismiss, Bausch makes arguments against any claims based on the adequacy or efficacy of the recall. As did the opposion to the first motion to dismiss, Warnshuis again makes no attempt to defend any claims based on the recall. Therefore, the Court will make the same holding that it did in the prior motion to dismiss. Given Warnshuis's failure to defend a "negligent recall" claim or address Bausch's arguments, the Court reads the opposition as meaning that the second cause of action does not contain such a claim and will not address the adequacy of any allegations that could be read to support such a claim. See Doe v. Bredesen, 507 F.3d 998, 1007 (6th Cir. 2007); Marroquin v. Pfizer, Inc., 367 F.Supp.3d 1152, 1159 (E.D. Cal. 2019); Pecover v. Electronic Arts, Inc., 633 F.Supp.2d 976, 984 (N.D. Cal. 2009); In re TFT-LCD Antitrust Litig., 586 F.Supp.2d 1109, 1131 (N.D. Cal. 2008). If Warnshuis wishes to pursue a negligent recall claim, he should allege such a claim as a separate and distinct cause of action.

alleges that Bausch was previously notified by the FDA of similar contamination and prior recalls. See TAC ¶ 29. The TAC then alleges that Bausch failed to instigate the subject recall until late August/early September. See id. That is, the relevant action identified is the lateness of the recall; the TAC does not allege that Bausch failed to fix contamination problems. Obviously, the recall is not a manufacturing event, it post-dates the sale of the defective nasal spray, and it involves no actual contact with the nasal spray. The recall simply has nothing to do with bacterial contamination being present on the purchased nasal spray. Therefore, Paragraph 29 does not adequately identify negligent conduct by Bausch that resulted in the bacterial contamination of the nasal spray. Without negligent conduct that created a defect, there is not a plausible claim alleged against Bausch for negligent products liability.[4] Dismissal of the second cause of action is appropriate.[5]

### 3. Lumping Allegations

A plaintiff who sues multiple defendants must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8. Flores v. EMC Mortg. Co., 997 F.Supp.2d 1088, 1103 (E.D. Cal. 2014); Gavin v. Trombatore, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988). That is, a pleading should "allege what role each Defendant played in the alleged harm[.]" Inman v. Anderson, 294 F.Supp.3d 907, 919 (N.D. Cal. 2018). "Broad allegations against numerous defendants are not specific enough to provide the defendants with notice of the plaintiffs' allegations." Sheffield v. Orius Corp., 211 F.R.D. 411, 415 (D. Or. 2002). Generally, "[s]pecific identification of the parties to the activities alleged by the plaintiffs is required . . . to enable [a]

---

[4] The Court notes that the first part of Paragraph 29 is a laundry list of activities that may be associated with the manufacturing and distribution chain of Ocean Saline Nasal Spray. However, some of the activities listed suffer from the same problem as a recall. There is no way that the bacterial contamination would have been present on the nasal spray purchased by Warnshuis due to selling, marketing, warranting, and advertising. Further, although it is unclear precisely what is meant by distributing, supplying, and providing, it seems unlikely that such conduct would cause the bacterial contamination.

[5] The allegations in the TAC suggest that Warnshuis may be attempting to identify a number of negligent acts/claims. However, the Court reads the complaint as a whole as based on "products liability" theories and reads the second cause of action consistent with its title, negligence products liability. As explained above, under a negligence products liability theory, the negligence of a defendant causes a product defect and the defect causes injury. The only defect alleged in the TAC is bacterial contamination. If Warnshuis intends to allege negligence theories against one or more Defendants that are not negligent products liability theories, then he should allege those theories in causes of action that are separate and distinct from the second cause of action. Similarly, if there are other defects with the product at issue, those additional defects must be expressly identified under the second cause of action.

defendant to plead intelligently." Flores, 997 F.Supp.2d at 1103 (quoting Van Dyke Ford, Inc. v. Ford Motor Co., 399 F.Supp. 277, 284 (D. Wis. 1975)); Gen-Probe, Inc. v. Amoco Corp., 926 F.Supp. 948, 961 (S.D. Cal. 1996). Therefore, complaints that lump defendants together without adequately distinguishing claims and alleged wrongs among the defendants are improper. See Inman, 294 F.Supp.3d at 919; Flores, 997 F.Supp.2d at 1103; Gen-Probe, 926 F.Supp. at 961; Gauvin, 682 F.Supp. at 1071.

With respect to the third cause of action for breach of warranty, there is only one plausible claim alleged against Bausch for breach of the implied warranty of merchantability. The Court has explained that Warnshuis has a legitimate basis for alleging that both Bausch and PQM are manufacturers and that the Federal Rules of Civil Procedure permit Warnshuis to allege that both PQM and Bausch are the manufacturer of the purchased nasal spray. With the understanding that there is only a merchantability claim based on Bausch's status as "manufacturer," dismissal for any "lumping" problems that might exist is unnecessary.

With respect to the second cause of action, there are aspects of the claim that "lump" all defendants together. However, not all lumping allegations are necessarily improper. For example, Paragraph 26 lumps Defendants together for purposes of essentially stating that Defendants are in the chain of production and distribution of Ocean Saline Nasal Spray. What needs to be distinguished are the particular claims against each defendant and what each particular defendant did that was tortiously wrong. See id. Warnshuis's opposition indicates that Paragraph 29 attempts to identify the particular negligent conduct by Bausch, i.e. Bausch failed to fix the contamination problem that it had been alerted to. But, as explained above, Paragraph 29 does not actually support a plausible negligent products liability claim. Nevertheless, because Warnshuis has indicated that the particular conduct that was negligent by Bausch is found in the second sentence of Paragraph 29, dismissal for improper lumping is unnecessary.[6]

---

[6] The relevant portion of Paragraph 29 makes allegations against both PQM and Bausch without distinguishing the individual conduct of the two. However, the Court reads Paragraph 29 in conjunction with the allegations that both PQM and Bausch are the "manufacturers." As manufacturers, PQM and Bausch would be directly aware of the recall and, as manufacturers, would need to take appropriate corrective actions. Until the precise role of Bausch and PQM can be ascertained, it is acceptable to make the same allegations against Bausch and PQM as "manufacturers." Given the reasonable basis that Warnshuis has for alleging that PQM and Bausch are manufacturers, making identical

10

### 4. Leave to Amend

With respect to the third cause of action, the Court's analysis in the prior motion to dismiss addressed the need to allege the precise terms of an express warranty. In response to that analysis, the TAC identified a statement on the nasal spray box. However, the statement merely identifies what particular type of nasal spray that Ocean Saline Nasal Spray is, the statement does not make any promise that could reasonably be construed as an express warranty with respect to the injuries sustained by Warnshuis. Given the Court's prior analysis and Warnshuis's attempt to identify an express warranty, the Court finds that granting leave to amend this claim a second time would be futile. Therefore, dismissal of the express warranty claim will be without leave to amend.

With respect to the second cause of action, Paragraph 29 does not support a plausible negligence products liability claim. However, based on Warnshuis's opposition, it is not clear that amendment would be futile. Allegations that Bausch failed to fix the contamination problems of which it was aware because of prior FDA notifications, combined with allegations that identify reasonably probable and suspected negligent acts, see Fed. R. Civ. P. 11(b)(3), or actual known specific acts of negligence, would be sufficient to allege a plausible negligence products liability claim.[7] Therefore, dismissal will be with leave to amend.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant Bausch's motion to dismiss (Doc. No. 39) is GRANTED with respect to the second cause of action and third cause of action for breach of express warranty;
2. Defendant Bausch's motion to dismiss the third cause of for breach of the implied warranty of merchantability is DENIED;

---

allegations against PQM and Bausch as "manufacturers" will offend neither Rule 8(d) nor the rule against lumping defendants together.

[7] For example, the Second Amended Complaint alleged that Defendants failed to maintain adequate separate defined areas to prevent contamination and failed to establish and follow adequate written procedures for cleaning and maintenance of equipment. In the prior motion to dismiss, the Court found that such conduct would support a products liability negligence claim since it could be easily inferred that the failure to adequately segregate and clean equipment could cause bacterial contamination. Nevertheless, these allegations were not repeated in the TAC.

3.  Plaintiff's breach of express warranty cause of action is dismissed without leave to amend;

4.  Plaintiff may amend the second cause of action, consistent with the analysis of this order, within twenty-one (21) days of service of this order;

5.  Consistent with the analysis of this order, Plaintiff may include in an amended complaint additional negligence claims, including negligent recall claims, as claims that are separately and distinctly pled from the second cause of action for negligent products liability; and

6.  If Plaintiff fails to timely file an amended complaint, then leave to amend shall be withdrawn automatically and without further order, and Defendant Bausch shall file an answer within twenty-eight (28) days of service of this order.

IT IS SO ORDERED.

Dated:   December 8, 2020                              _____
                                                                     SENIOR  DISTRICT  JUDGE